## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **A.S.**, *et al.*,<br><br>                    **Plaintiffs,**<br><br>       **v.**<br><br>**DISTRICT OF COLUMBIA,**<br><br>                    **Defendant.** | **Civil Action No. 10-cv-1670 (BJR)**<br><br>**ORDER AND MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT** |

This is an action under the Individuals with Disabilities Education Improvement Act (hereinafter "IDEA") for attorneys' fees and costs incurred during administrative proceedings in which plaintiffs were the prevailing party.[1]  This matter was reassigned to this court from Judge Walton on September 1, 2011.  Before the court at this time is *Plaintiffs' Motion for Summary Judgment* [dkt. #11] ("*Mot. for SJ*").  Plaintiffs allege that they are entitled to additional fees from the District of Columbia Public Schools (hereinafter "DCPS") in the amount of $49,709.22. *Mot. for SJ* at 2.  Having read the parties' pleadings, and for the reasons stated herein, plaintiffs' motion will be granted in part.

## I.    BACKGROUND

### A.    Findings of Fact[2]

Plaintiff A.S., now thirteen years old, is a child residing in the District of Columbia who

---

[1] While defendant disputes whether plaintiff prevailed on "certain claims," defendant's reimbursement of $12,776.85 of plaintiffs' attorneys' fees and costs indicates that defendant does not dispute that plaintiffs were prevailing parties to an extent sufficient to qualify to recover attorneys' fees under the statute. *Defendant's Opposition to Plaintiffs' Motion for Summary Judgment* [dkt. #12] (hereinafter "*Def.'s Opp.*"). at 1

[2] Unless otherwise noted, the facts set forth herein are drawn from the parties' statements of undisputed material facts submitted pursuant to Local Rule 7(h) and from the Hearing Officer's Determination.

was found eligible in 2008 for special education and related services as a child with a disability under the IDEA. Hearing Officer's Determination [dkt. #11-3] (hereinafter "H.O. Det.") at 4, ¶¶ 1, 4.  A.S. was been diagnosed at that time with a "Specific Learning Disability" and "Other Health Impairment." *Id.*, ¶ 2.

A.S. struggled academically and experienced behavioral difficulties at his charter school during the 2008-2009 school year.  In light of A.S.'s continued difficulties at the charter school, in early 2009, his parents applied for and secured placement for A.S. at Kingsbury Day School, a private school. *Id.* at 5, ¶¶ 6, 8; Plaintiffs' *Statement of Undisputed Material Facts* [dkt. #11-1] ("Pltfs' SOF") ¶ 5.

On February 10, 2009, A.S.'s multi-disciplinary team (hereinafter "MDT") convened a meeting at the charter school to conduct an annual review of A.S.'s individualized education program (hereinafter "IEP").  At that meeting, A.S.'s parents reported that his pediatrician had recently diagnosed him with ADHD.  While the MDT added the particular disability classification to A.S.'s IEP in light of the diagnosis, "goals and objectives to address weaknesses in attention, organization, and/or other areas affected by his ADHD were not developed at [that] time."  Under the IEP, A.S. remained at the charter school. H.O. Det. at 6, , ¶¶ 10-11.  Following the February IEP meeting, A.S.'s parents sent a letter through counsel formally rejecting the IEP and proposed placement, and requesting public funding for A.S.'s attendance at Kingsbury.  A.S. completed the 2008-2009 school year at the charter school, but "his behavioral difficulties continued to impact his ability to make academic progress." *Id.* at 7, ¶¶ 14, 16.

In June 2009, plaintiffs' counsel wrote to the charter school and DCPS expressing concerns about A.S.'s educational program at the charter school, and requesting another MDT/IEP team meeting. *Id.*, ¶ 17.  In early July 2009, the charter school sent A.S.'s parents

letters of invitation for an MDT/IEP team meeting on July 14, 2009.  The meeting was canceled

when A.S.'s parents provided the school with a lengthy independent evaluation report on July 13,

2009. *Id.* at 8, ¶ 19.

On July 20, 2009, A.S.'s parents filed a due process complaint against DCPS, and a

resolution meeting was held on July 27, 2009.  DCPS agreed to conduct additional assessments

before discussing any changes in programming and placement.  DCPS sent an invitation to

convene an MDT/IEP team meeting on or about July 22, 2009, but A.S.'s parents declined the

meeting.  On or about August 10, 2009, A.S.'s parents wrote to the charter school and DCPS

informing them that A.S. would attend Kingsbury during the 2009-2010 school year, and

notifying DCPS of their intent to seek public funding for this placement.  A.S.'s parents

responded to subsequent invitations to convene an MDT/IEP team meeting by informing the

charter school and DCPS that they wished to wait for the completion of all evaluations before

returning to such a meeting. *Id.*, ¶¶ 20-22.

On or about September 2, 2009, A.S. began attending Kingsbury. *Id.* at 9, ¶ 25.  The team

reconvened on or about November 16, 2009 to discuss A.S.'s speech and language evaluation;

the IEP team ultimately decided that A.S. did not require speech and language services.  A.S.'s

parents did not agree with the outcome of that meeting. *Id.* at 9-10, ¶ 29.

On December 9, 2009, the team reconvened to finalize the IEP.  As a result of that

meeting, the team developed a revised IEP; however, the team did not discuss school placement

options or propose a specific school placement for A.S.'s parents to consider.  Instead, a DCPS

representative informed A.S.'s parents that A.S.'s IEP would be sent to a DCPS "cluster

supervisor" for a determination of placement.  A.S.'s parents' request to participate in the

placement discussion was rejected.  In fact, the individuals who met to discuss A.S.'s school

placement subsequent to the December IEP meeting, including the Compliance Case Manager and a DCPS "cluster supervisor," had no personal knowledge of A.S., and had never observed him. A.S.'s parents were unable to participate in the decisions concerning A.S.'s placement, and they did not receive a finalized copy of the IEP for several weeks following the December 2009 meeting. *Id.* at 10-11, ¶¶ 30-36.

In March 2010, A.S.'s parents, after visiting the school placement that had been proposed by DCPS, concluded that the program was not appropriate. A.S. would have been the only fifth-grade student in a classroom of older students, and he would have received only fifteen hours per week of specialized instruction, whereas A.S.'s IEP recommended nineteen hours. *Id.* at 12-13, ¶¶ 37-39.

On April 29, 2010, A.S.'s parents filed an administrative appeal on his behalf. Pltfs' SOF ¶ 2. On May 11, 2010, the parties engaged in an unsuccessful dispute resolution meeting. A Due Process Hearing was held before Hearing Officer Bruce Ryan. The hearing took place in four sessions: June 17, 18, and 30, and July 2, 2010. There was testimony from three witnesses for petitioner and seven witnesses for DCPS. H.O. Det. at 2.

At the hearing, plaintiffs claimed DCPS denied a Free and Appropriate Public Education (hereinafter "FAPE") to A.S. by failing to evaluate him, by failing to provide an appropriate IEP in February 2009, by failing to propose an appropriate placement in February 2009, by failing to find him eligible for speech and language services, by proposing an "inappropriate level of service" and an inappropriate placement proposal following the December 2009 IEP meeting, and by committing various procedural violations. As relief for the alleged denials of FAPE, plaintiffs sought reimbursement for the costs of attending Kingsbury for the 2009-10 school year and prospective placement at Kingsbury. *Id.* at 3-4. On July 19, 2010, Hearing Officer Ryan

issued his written determination.

The Hearing Officer determined that plaintiffs failed to show a denial of FAPE on the basis of a failure to evaluate A.S., a failure to propose an appropriate placement in February 2009, or a denial of speech and language services.  The hearing officer found that plaintiffs did show a denial of FAPE in part based on the lack of appropriateness of the February 2009 IEP, as well as for certain procedural violations and based on the inappropriate December 2009 IEP and inappropriate placement proposal. *Id.* at 14.  As to the relief requested, Hearing Officer Ryan granted retroactive reimbursement for the latter half of the 2009-10 school year at Kingsbury, but denied it for the first half.  He determined that, prior to the 2009-10 school year, A.S.'s parents had specifically requested that the parties wait for completion of all further evaluations before returning to an IEP meeting; in the meantime, however, A.S. was already enrolled at Kingsbury. Furthermore, Hearing Officer Ryan found that evidence suggested that A.S.'s parents may have predetermined [A.S.'s] placement at Kingsbury as early as February 2009, long before the evaluations were completed.  The Hearing Officer agreed with DCPS that "such predetermined course of action" was "unreasonable under the circumstances and acted to deprive DCPS of a fair opportunity to evaluate" A.S. *Id.* at 26-27.

As for prospective placement, the Hearing Officer concluded that plaintiffs had not demonstrated in the hearing "that a full-time, out of general education placement at the Private School, going forward, is necessary and appropriately tailored to meet the specific needs of the Student."  He also determined that "relative equities" suggested that DCPS should have a further opportunity to convene an IEP team meeting, including A.S.'s parents, to discuss an appropriate placement for the 2010-11 school year.  However, in the event that DCPS did not complete the process prior to the beginning of the next school year, DCPS would be obligated to fund A.S.'s

attendance at Kingsbury until his educational placement changed. *Id.* at 27-28.[3]

On July 27, 2010, plaintiffs sent a letter and supporting documentation to DCPS requesting $62,486.07 for attorneys' fees and costs sustained during the administrative action. Pltfs' SOF at ¶ 7.  DCPS responded on August 24, 2010 by authorizing a check for reimbursement for attorneys' fees and costs in the amount of $12,776.85. *Id.* at ¶ 8.

## B.      Procedural History

On September 30, 2010, plaintiffs filed their Complaint [dkt. #1], which alleged that DCPS had not reimbursed any of the attorneys' fees and costs to which plaintiffs were entitled. *Complaint* ¶ 11.  On October 7, 2010, plaintiffs filed an Amended Complaint [dkt. #3], which supplemented the claims with the information that DCPS had issued a check for reimbursement on September 30, 2010, in the amount of $12,776.85; however, plaintiffs claimed, a balance of $49,709.22 remained. *Amended Complaint* ¶ 11.[4]  On July 13, 2011, plaintiffs filed their motion for summary judgment.[5]

## II.    LEGAL STANDARD

Under Section 1415(i)(3)(B) of the IDEA, federal district courts have the authority to "award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(I).  The court must initially determine whether

---

[3] An IEP meeting was convened prior to the 2010-11 school year; A.S. was formally placed at Kingsbury as a result of the meeting. *Mot. for SJ* at 8 n.3.  That determination has no bearing on this court's decision.

[4] On November 16, 2010, then-defendant Adrian Fenty filed a Motion to Dismiss [dkt. #4].  Judge Walton granted the motion, to which plaintiffs filed no opposition, on April 27, 2011. *Order* [dkt. #7].

[5] On September 7, 2011, the same day plaintiffs filed their reply brief [dkt. #15] (hereinafter "*Reply*"), defendant filed a *Notice of Supplemental Authority* [dkt. #16], drawing the court's attention to two recent cases.  As plaintiffs note in their reply to the *Notice* [dkt. #17], the document appears to be more a supplemental memorandum of law than a "notice." *Id.* at 1-2.  Defendant did not request permission to file a surreply, which is what this document appears to be.  While the court may address the cases noted by defendant, it will not consider the parties' arguments in the *Notice* and reply in its decision.

the party seeking attorney's fees is the prevailing party. *Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010).[6]  If a party has prevailed to some degree, it is eligible for attorneys' fees; however, the court may determine that a reduction in fees is appropriate if a party is only partially successful.  *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Once the court has made its determination as to whether a party has prevailed and the extent to which it has prevailed, it must determine whether the attorneys' fees being sought are reasonable. *Jackson*, 696 F. Supp. at 101.  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433.

A plaintiff bears the burden of showing that both the number of hours expended on particular tasks and the hourly rate are reasonable. *Bucher v. District of Columbia*, 777 F. Supp. 2d 69, 73 (D.D.C. 2011).  In demonstrating the reasonableness of the hours spent on particular tasks, the plaintiff may satisfy its burden "by submitting an invoice that is sufficiently detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified." *Bucher*, 777 F. Supp. 2d at 73 (quoting *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41, 45 (D.D.C. 2004) (internal citations omitted)).  In establishing that the hourly rate is reasonable, plaintiffs must submit evidence concerning the attorneys' skill, experience, and reputation; the attorneys' billing rates in similar cases; and the prevailing market rates in the relevant community. *Jackson*, 696 F. Supp. 2d at 101; *see also Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995)).

---

[6] As set forth *supra* at footnote 1, there is no issue as to whether plaintiffs prevailed at all, rendering them eligible for attorneys' fees.  The issue in this case is the degree to which plaintiffs were successful.

III.   **ANALYSIS**

A.    **Extent of plaintiffs' success**

While defendant does not dispute that plaintiff prevailed in part, defendant argues that plaintiffs' full fee request is not reasonable based on the limited number of issues on which plaintiff prevailed. *Def.'s Opp.* at 1.  Defendants allege that the administrative litigation concerned six "claims," of which plaintiffs prevailed on fewer than half. *Id.* at 6-7.  Plaintiffs argue that they achieved "substantial success" with their lawsuit, to the extent that they are entitled to full payment of attorneys' fees. *Mot. for SJ* at 6.  As to those issues for which the Hearing Officer did not find for the plaintiffs, plaintiffs allege that the fees should be awarded in full because the issues presented at the hearing are interconnected such that hours worked on different issues cannot be segregated from one another. *Id.* at 8.

The court rejects plaintiffs' argument that, because the issues in this case are interconnected, that entitles them to an attorneys' fee award for all of the hours reasonably spent on the litigation as a whole.

The case governing awards of attorneys' fees to partially successful plaintiffs is *Hensley v. Eckerhart*, 461 U.S. 424 (1983).  The Supreme Court acknowledged in *Hensley* that, if a plaintiff has achieved only partial success, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436. "There is no precise rule or formula for making these determinations." *Id.*  A court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-37.  That is, if a plaintiff prevails on interconnected claims, "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* at 434.  The court "should focus on the

significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on litigation." *Id.*  Therefore, it is the *degree* of the plaintiff's success that is the critical factor to the determination of the size of a reasonable fee. *Texas State Teachers Assoc. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 876 (1989).

The court finds that plaintiffs were not "substantially successful" to an extent that would justify attorneys' fees equal to the "product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate." *Hensley*, 461 U.S. at 436.  The relief plaintiffs requested was for retroactive payment of the tuition at Kingsbury for the 2009-10 school year, and prospective payment of tuition at Kingsbury for the forthcoming school year; plaintiffs succeeded only in obtaining tuition for the latter half of the 2009-10 school year.  Thus, it appears to the court that plaintiffs attained only half of the relief they sought.  Therefore, this court will impose a reduction of 50 percent on the final award of attorneys' fees.

**B.     Hours expended**

Defendant objects to plaintiffs' claims for fees that it argues are "too remote in time or unrelated to the proceeding." *Def.'s Opp.* at 15.  Plaintiffs filed their due process complaint on April 29, 2010, but billing records date back as far as January 29, 2009. *Mot. for SJ*, Exh. B. at 2. Defendant argues that actions dating back that far are not directly related to the administrative proceeding, and the charges should be denied. *Def.'s Opp.* at 16.

Having reviewed plaintiffs' claimed charges, the court finds that there are two issues that need to be considered:  whether certain charges are available under the statute, and whether the remaining charges are too remote from the hearing.

*1.     Charges related to IEP meetings*

While attorneys' fees are available under Section 1415(i)(3)(B) of the IDEA, Section

1415(i)(3)(D) places prohibitions on recovery of attorneys' fees and costs for certain services. 20

U.S.C. § 1415(i)(3)(D).  Relevant to this case is Section 1415(i)(3)(D)(ii), which disallows fees

"relating to any meeting of the IEP Team unless such meeting is convened as a result of an

administrative proceeding or judicial action." 20 U.S.C. § 1415(i)(3)(D)(ii).

Plaintiffs' billing includes charges which are clearly related to IEP meetings that took

place in 2009.  One charge is for the work of Corey Craun on October 14, 2009, for thirty

minutes. *Mot. for SJ*, Exh. B at 1.  A charge by Paula Rosenstock on July 27, 2009, charges one

hour to "Pre-hearing conference, follow up scheduling, draft letter to school system re:

upcoming IEP meeting." *Id.*, Exh. B at 6.  On November 16, 2009, Ms. Rosenstock charged six

hours for "IEP meeting, travel;" on December 9, 2009, she charged five hours to "Attend IEP

meeting, travel." *Id.*, Exh. B at 8.  All of these charges will be disallowed.

After adding together the total charges related to IEP meetings, the court has determined

that a reduction of one-half hour of Mr. Craun's time and 12 hours of Ms. Rosenstock's time is

appropriate in light of the statutory prohibition.

> 2.    *Whether certain charges are too remote in time*

Where it is alleged that services were performed too remote in time to be eligible for

reimbursement, plaintiffs' counsel must provide sufficient explanation to tie the charges to the

eventual administrative hearing. *Czarniewy v. District of Columbia*, Case No. 02-CV-1496, U.S.

Dist. LEXIS 5161, at *12 (D.D.C. Mar. 25, 2005).

Having reviewed plaintiffs' billing records, minus the charges related to IEP meetings

discussed above, the court is satisfied that the charges are related to the resulting due process

hearing.  As noted in *Lax*, given sufficient documentation a year or more is "an entirely

reasonable window of time to be engaging in productive work that will result in a favorable

administrative decision." *Lax v. District of Columbia*, Case No. 04-CV-1940, 2006 U.S. Dist.

LEXIS 46888, at *17 (D.D.C. July 12, 2006) (citation omitted).  The plaintiffs have submitted an

invoice that is sufficiently detailed to permit this court to determine that the hours claimed were

related to the administrative hearing.  It is clear that plaintiffs' counsel were building their case

concerning A.S. for some time prior to the due process hearing, particularly considering

plaintiffs' early dissatisfaction with the decisions made by DCPS with regard to A.S.  The court

will not disallow any charges on the basis of their being "remote in time."

> C.    **Hourly rates**

>> 1.    *The Laffey Matrix is appropriate*

Plaintiffs seek fees for counsel Michael Eig at an hourly rate of $425; they seek fees for

counsel Paula Rosenstock at an hourly rate of $325. *Mot. for SJ*, Exh. B [dkt. #11-4] at 3-11.

Plaintiffs rely on the fact that these rates are consistent with (and, in some cases, below) the rates

in the *Laffey* Matrix, as updated and maintained by the Civil Division of the United States

Attorney's Office for the District of Columbia. *Laffey v. Northwest Airlines*, 746 F.2d 4, 12-14

(D.D.C. 1994).[7]  The Matrix "sets out compensable billing rates for attorneys in the District of

Columbia and has been adopted by the judges of this District in many cases." *Bucher*, 777 F.

Supp. 2d at 74.

Defendant objects that *Laffey* is inappropriate in IDEA cases, because the *Laffey* Matrix

represents prevailing attorneys' hourly rates for complex federal litigation.  Defendant argues that

plaintiffs must offer greater justification for claiming the *Laffey* rates, noting that, "when IDEA

hearings are uncomplicated, courts have held the Matrix inapplicable." *Def.'s Opp.* at 13 (citing

*Agapito v. District of Columbia*, 525 F. Supp. 2d 150, 152 (D.D.C. 2007)).  Instead, defendant

---

[7] The current *Laffey* Matrix may be viewed at http://www.justice.gov/usao/dc/divisions/civil.html (last visited Jan. 30, 2012).

claims, the appropriate measure for Plaintiffs' counsel's hourly rate for IDEA litigation is the rate established by DCPS Attorney Fee Guidelines.

The cases have been mixed on this issue. This court finds that the determination must be made in a case by case analysis. The cases that apply DCPS rates tend to involve uncomplicated proceedings. In *McClam v. District of Columbia*, Case. No. 11-CV-381, 2011 U.S. Dist. LEXIS 99518 (D.D.C. Sept. 6, 2011), the court determined that "the type of straightforward preparation ordinarily required for an IDEA due process hearing" did not merit reimbursement at the *Laffey* level. *Id.*, at *9. However, not all IDEA administrative hearings are uncomplicated. In *Bucher v. District of Columbia*, Judge Kessler applied the *Laffey* Matrix and distinguished *Agapito* from the case before her, where the hearing "lasted twenty-seven hours over four days," and where the "Hearing Officer considered forty-two proposed exhibits." *Bucher*, 777 F. Supp. 2d at 74.

The case before this court was not "uncomplicated." Like *Bucher*, the hearing took place over four days, involved 105 proposed exhibits, and the testimony of ten witnesses (seven of whom were offered by DCPS). H.O. Det. at 2. The Hearing Officer's Determination itself is twenty-eight pages long. This was not a "straightforward" due process hearing, but clearly involved complex issues concerning A.S.'s disability and placement. Therefore, the court finds that using the *Laffey* Matrix is appropriate.

## 2.   *Inadequately supported billing rates*

In their Opposition, defendant points out that plaintiffs failed to provide any supporting documentation for four of the individuals who appear in their billing records: Corey Craun, Janene Jackson, Anjali Prakash, and Megan Gorzynski. Defendant argues that the court "cannot properly conclude that *any* rate is proper for these individuals." *Def.'s Opp.* at 8-9 (emphasis in original). Plaintiffs fail to respond to the argument concerning these individuals in their reply.

As defendant notes, case law demonstrates that, in cases where plaintiffs fail to provide any information regarding the level of experience or education of paralegals, the court reduces the rate by twenty-five percent. *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C.Cir. 2004).  Furthermore, where plaintiffs fail to provide any information regarding the level of experience, reputation, or education of an attorney, this court has reduced that rate to the lowest level—that of a paralegal or law clerk—and then further reduced the rate by twenty-five percent. *Jackson*, 696 F. Supp. 2d at 105.

Plaintiffs' billing statements show that the billing rate for Craun, Gorzynski, and Jackson was $180 per hour. *Mot. for SJ*, Exh. B at 1-3.  As for Prakash, her billing rate was $325 per hour, and her name appeared on the letterhead, so she was undoubtedly an attorney.  Given the complete lack of supporting documentation for her background, it is appropriate to assign the lowest billing rate to her work.

Turning to the Laffey Matrix, the rate for paralegals and law clerks was $130 per hour from June 1, 2008 to May 31, 2010,[8] and $135 per hour from June 1, 2010 to May 31, 2011. *Laffey Matrix, 2003-2012*, http://www.justice.gov/usao/dc/divisions/civil.html (last visited Jan. 30, 2012).  A twenty-five percent reduction in these rates results in a rate of $97.50 per hour during the earlier period, and $101.25 per hour during the later period.  While this reduction may seem drastic, the court reminds plaintiffs that they had the burden of substantiating all charges, and they failed to meet that burden.  The court will adjust the fees accordingly.

**D.    Costs**

Defendant argues that a reduction in the costs requested by plaintiffs is appropriate.  First, defendant claims that charges remote in time from the filing of the due process claim should be

---

[8] The rates did not change from the 2008-2009 matrix to the 2009-2010 Matrix.

disallowed. *Def.'s Opp.* at 17.  In addition, defendant argues that charges for faxing and

overnighting services should be disallowed, "pursuant to DCPS' guidelines." *Id.*  Finally,

defendant reduced plaintiffs' photocopying costs from $0.35 to $0.15 per page, without further

explanation. *Id.*

This court has rejected defendant's arguments as to the remoteness in time of certain

charges as to attorneys's fees, and it will reject them on the basis of costs.  Likewise, the court

will reject defendant's use of DCPS' guidelines, as this court has declined to adopt those

guidelines.  As defendant offers no explanation for the reduction in photocopying costs, the court

will not consider the reduction.  However, the court will reduce costs by 50 percent, in line with

the reduction made to attorneys' fees based on plaintiffs' level of success.

## IV.    CONCLUSION

For the foregoing reasons, it is, hereby,

**ORDERED** that *Plaintiffs' Motion for Summary Judgment* is **GRANTED in part**.

The court will discount plaintiffs' attorneys' fees for the following: (1) unsupported fees

for Corey Craun, Janene Jackson, Anjali Prakash, and Megan Gorzynski; and (2) fees charged in

connection with preparing for or attending IEP meetings.  The court will also make an overall

percentage reduction to fees and costs based on the degree to which plaintiffs were not successful

in their claims for relief.  The total fee award and deductions break down as follows:

| ATTORNEY/PARALEGAL | Total Billed | Total Awarded |
|---|---|---|
| Anjali Prakash | $1,495.00 | $448.50 |
| Corey Craun | $3,060.00 | $1,635.00 |
| Janene Jackson | $36.00 | $19.50 |
| Megan Gorzynski | $432.00 | $235.50 |
| Michael Eig | $6,417.50 | $6,417.50 |
| Paula Rosenstock | $48,815.00 | $44,915.00 |

| | | |
|---|---|---|
| **COSTS** | $2,230.57 | $2,230.57 |
| | | |
| **SUBTOTAL** | $62,486.07 | $55,901.57 |
| | | |
| **50% REDUCTION** | | -$27,950.79 |
| | | |
| **DCPS Payment** | | -$12,776.85 |
| | | |
| **TOTAL AWARD** | | **$15,173.94** |

It is further, hereby,

**ORDERED** that defendant shall pay the sum of $15,173.94 no later than sixty (60) days from the issuance of this Order.

**SO ORDERED.**

**February 1, 2012**

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE